## CITY NAT. BANK OF BOWIE et al. v. SOUTHERN CASUALTY CO.

### No. 12371.

Court of Civil Appeals of Texas. Fort Worth. Nov. 15, 1930.

Benson & Benson, of Bowie, for appellants.

Bartlett, Brown & Thornton, of Dallas, for appellee.

DUNKLIN, J.

The City National Bank of Bowie, Security National Bank of Bowie, and the Farmers' & Mechanics' National Bank of Nocona, have appealed from a judgment against them in favor of the Southern Casualty Company for $713.96, the alleged balance due on a policy issued by the plaintiff for compensation insurance under the Workmen's Compensation Law to the Western Gin Company.

The trial was before the court without a jury. The policy issued covered insurance from August 8, 1924, to August 8, 1925, and the principal issue in controversy was as to whether or not the amount claimed by the plaintiff and awarded it by the court was the correct amount of insurance due under that policy. By articles 4907 and 4908, Rev.

Civ. Statutes, the state insurance commission is authorized to fix the amount of premiums due and payable under such a policy, and the evidence introduced upon the trial of this case was sufficient to sustain the allegations of plaintiff's petition that the, premiums charged and sought to be recovered were in accord with the rates fixed by that commission, and that the policy issued stipulated for the payment of such premiums.

The policy was issued to the Western Gin Company, who operated cotton gins in the towns of Bowie, Ringgold, Montague, Park Springs, Chico, and Bridgeport, and the compensation insurance was designed to cover insurance for all of those gins. The record further shows that the gin company operated and conducted those gins for the use and benefit of the defendants who, therefore, were liable for the premiums under the terms of the policy, if such liability was incurred.

By the provisions of article 4907 of the statutes it is the duty of the state insurance commission to establish classifications of hazards and rates of premiums for such insurance, and the record shows here that the employees of the gin company were listed in three different classes, according to the different kinds of service performed by them. As service in some of those departments was more hazardous than in some others, different premiums applied to those several classifications, and the total amount of premiums accruing was determined by the number of employees in the several classifications and compensation paid to them for their services.

■ The chief defense urged to plaintiff's suit consisted in allegations to the effect that the policy was issued and accepted under an agreement made between plaintiff acting through its agent, E. M. Stallings, and the Western Gin Company, represented by N. L. Edgar, which was, in substance, that the rate of premiums to be charged would be the same as that charged in another policy on the same gins, issued in the next preceding year, and which were less than those stipulated in the policy on which the suit was based.

The testimony of Mr. Edgar, who was the sole representative of the gin company in taking out the policy, was in part as follows:

"I had had that conversation with Mr. Stallings before you paid him this $443.00. When I paid him $443.00 I knew that I was paying him $7.39 a hundred. I never discussed this any more until demand was made on me to pay this additional premium. At the time I paid him $443.00 I estimated the payroll to be $6,000.00. And the $443.00 took care of that insurance at $7.39 a hundred. The payroll, of course, reached a considerable larger amount that I anticipated. According to my classification there of operation expenses, our actual operation ran more than $2000.00 more than I estimated the entire payroll would be. Mr. Stallings never at any time told me that he would personally undertake to fix that rate at any particular figure. I knew Mr. Stallings didn't have the right to fix the basis. Mr. Stallings just informed me that the rate that had been in force was still in force as far as he knew. I don't know that Mr. Stallings told me that he didn't know the rate, but I knew Mr. Stallings didn't know. I didn't suppose he knew very much more than I did. We had to watch for rulings from the department. Mr. Stallings told me as far as he knew the same rate would apply that had always applied. He didn't guarantee it would apply."

That testimony was corroborated by the testimony of Mr. Stallings, the agent of the insurance company, and there was no testimony to controvert it. Hence, the assignment of error based upon the contention that the evidence conclusively showed that the policy was issued under an agreement between those two witnesses that the premiums would be different from those for which the recovery was allowed, is overruled.

■ Plaintiff also introduced an auditor's report taken from the books kept by the gin company, showing the classifications of its employees and the wages paid. That report was certified to by Edgar as being correct, and he was the agent of the gin company in having charge of the books. And no evidence was offered impeaching that report. The objection urged by defendants to the admission of that report, to the effect that there were certain notations made in the right-hand column by some one other than the auditor or Mr. Edgar, was properly overruled; since those notations constituted no part of the report, and it is not contended that they in any manner tended to impeach the correctness of the report. Nor was there any error in admitting what is termed "the daily report," which was sent in by Mr. Stallings to the state insurance commission, purporting to show the issuance of the policy in question, on the alleged ground that it did not show a correct copy of the policy in controversy here, since, according to the uncontroverted testimony of Mr. Stallings, the same did show that the copy of the policy shown in that report was an exact copy of the original.

■■ Another point made was that no notice was given to the defendants to produce the original policy, although the bill of exception contains recitals to the effect that the same had been lost. The loss of that original, of course, rendered it unnecessary to serve notice on the defendant to produce it. The bill of exception to the introduction of the daily report also recites that a day prior to the suit a subpœna duces tecum had been served on Cecil Thomas, president of one of the defendants, requiring him to produce all the books kept by the defendants in connec-

tion with the operation of the gin plants in question. The service of such notice, in connection with the failure of the defendants to produce those books, was a sufficient predicate for the introduction of all the secondary evidence referred to above, and no effort was made by the defendants to controvert that evidence by production of the books in defendants' possession, and which they clearly knew from the allegations in plaintiff's petition that the amount sued for was necessarily based on the amount paid out by the defendants to their employees, and that their books would disclose this amount, and that unless the original books were produced plaintiff would resort to secondary evidence to prove their contents. See Adams v. Shemwell (Tex. Civ. App.) 276 S.W. 941; 22 Corpus Juris, page 1028, para. 1332(3), and page 1041, para. 1335 (d) et seq.

We conclude that all assignments of error should be overruled, and the judgment of the trial court affirmed, and it is so ordered.